## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ONTONAGON POWER GROUP, INC. ) <br> a Michigan corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> MALLARD LEASING, LLC, DOUGLAS ) <br> BROWN, INDUSTRIAL COMMODITY ) <br> RESOURCES, LLC and PATRICK ) <br> KELLERMAN, ) <br> ) <br> Defendants. ) | FILED: SEPTEMBER 2, 2008 <br> 08CV4960 <br> JUDGE MORAN <br> MAGISTRATE JUDGE COX <br> EDA <br> Case No. |

### PATRICK KELLERMAN'S NOTICE OF REMOVAL

Defendant Patrick Kellerman ("Kellerman"), by his undersigned counsel hereby removes this action to the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §§ 1332(a)(1), 1441 and 1446. In support of his removal, Kellerman states as follows:

1.    Ontonagon Power Group, Inc. ("Ontonagon") commenced an action (the "State Court Action") in the Circuit Court of Cook County, Illinois, Chancery Division (Case No. 08 CH 31223) against four defendants, including Kellerman. A true and correct copy of Ontonagon's complaint (and all other documents filed and served in that case) is attached hereto as Exhibit A.

2.    The Complaint seeks damages and injunctive relief against Kellerman and three other defendants: (1) Industrial Commodity Resources, LLC ("ICR"); (2) Mallard Leasing, LLC ("MLL"); and (3) Douglas Brown.

3.    The complaint establishes that diversity jurisdiction exists in this case. On its face, the Complaint alleges that Ontonagon is a Michigan corporation with a principal office in Ft. Myers,

Florida; that defendant ICR is a Kansas limited liability company with its principal place of business in Wichita, Kansas; and that MLL is a West Virginia limited liability company with its principal place of business in West Virginia. In addition, the complaint establishes that Brown is the owner and managing agent of MLL and Kellerman is the owner and managing agent of ICR. Ontaganon's submissions list a West Virginia address for Brown and a Kansas address for Kellerman.

JURISDICTION FOR RELIEF SOUGHT

4. By virtue of this Notice of Removal, Kellerman removes the State Court Action to this Court under 28 U.S.C. §§ 1331, 1441, and 1446. This Court has subject matter jurisdiction over the claims in this State Court Action pursuant to 28 U.S.C. § 1332(a)(1).

5. The parties are citizens of different states. Kellerman is a resident of Kansas. (Affidavit of Patrick Kellerman, att. as Ex. B hereto)  Douglas Brown is a resident of West Virginia. (Affidavit of Douglas Brown, att. as Ex. C hereto)

6. The amount of controversy exceeds $75,000.00 exclusive of interest and costs. (*See* Ex. A ¶¶ 4, 14(b)).

7. All of the Defendants in the State Court Action consent to its removal to this Court. (*See* Exs. B, C)

GROUNDS FOR RELIEF

8. Kellerman will promptly file a true and correct copy of this Notice of Removal with the Clerk of the Circuit Court for Cook County, Illinois, Chancery Division and will serve the Notice as required under 28 U.S.C. § 1446.

9. By filing this Notice of Removal, Kellerman does not waive any rights, claims, actions, defenses, set-offs or recruitments to which Kellerman is or may be entitled to in law or at equity,

all of which rights, claims, actions, defenses, set-offs or recruitments Kellerman hereby expressly reserves.

10. Kellerman received actual notice of this action.

WHEREFORE, Defendant Patrick Kellerman hereby removes the State Court Action to the United States District Court for the Northern District of Illinois, Eastern Division in accordance with 28 U.S.C. §§ 1331, 1441, and 1446.

Dated:  September 2, 2008                    Respectfully submitted:

By: _____
Timothy D. Elliott (ARDC 6237023)
Karen L. Blouin (ARDC 6289077)
RATHJE & WOODWARD, LLC
300 East Roosevelt Road, Suite 300
Wheaton, IL 60187-1908
Telephone: (630) 668-8500
Facsimile: (630) 668-9218

Counsel for Patrick Kellerman

## CERTIFICATE OF SERVICE

I certify that I caused to be served the foregoing NOTICE OF REMOVAL, which is

attached, upon all parties to this case via hand delivery and first-class U.S. Mail, on September 2,

2008, addressed as follows:


Joel J. Sprayregen
Roger J. Kiley
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr. Ste. 2800
Chicago, IL 60601
Tel: (312) 527-4000
Fax: (312) 527-1007


_____

Attorney for Defendants

08CV4960
JUDGE MORAN
MAGISTRATE JUDGE COX
EDA

# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

ONTONAGON POWER GROUP, INC. a
Michigan corporation,

        Plaintiff,

      v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,

        Defendants.

08CH31299

Case No. 08 CH

Judge

## VERIFIED COMPLAINT FOR INJUNCTION, DECLARATORY JUDGMENT, ACCOUNTING AND DAMAGES

Now comes Ontonagon Power Group, Inc. (hereinafter "OPG"), and for and as its Complaint against Mallard Leasing, LLC (hereinafter "MLL"), Douglas Brown (hereinafter "Brown"), Industrial Commodity Resources, LLC (hereinafter "ICR") and Patrick Kellerman (hereinafter "Kellerman"), says as follows:

### FACTS COMMON TO ALL COUNTS

1.      OPG is a corporation organized and existing under the laws of the State of Michigan, having its principal office in Ft. Myers, Florida, and is engaged in the business of remediation, demolition, sales and consulting.

2.      MLL is a limited liability company. On information and belief, MLL is organized and exists under the laws of the State of West Virginia, and has its principal office in that state. Brown is the owner and managing agent of MLL.

3.      ICR is a limited liability company.  On information and belief, ICR is organized and exists under the laws of the State of Kansas, and has its principal place of business in Wichita, Kansas. Kellerman is the owner and managing agent of ICR.

4.      OPG is the sole owner of all rights to sell and remove coal and coke located at the Acme Steel and Coal plant, 11236 South Torrence Avenue, Riverdale, Illinois (hereinafter sometimes referred to as the "Product"), by virtue of agreement with Jabco Industrial Services Company, Inc. (hereinafter "Jabco") dated July 6, 2007 (a copy of which is attached hereto as Exhibit A).  OPG's ownership rights to sell and remove the coal are secured by a lien, duly filed with the Illinois Secretary of State on or about May 24, 2007, a copy of the filing being attached hereto as Exhibit B.  OPG's rights to remove and sell the coal and coke are valuable, unique and time-sensitive.  OPG estimates that it will receive in excess of three million dollars for the Product, but all removal of Product must be completed by the time demolition of the Acme Steel and Coal plant (hereinafter "Acme Plant") is finished.  OPG expects demolition to be completed by Jabco by October 21, 2008.

5.      The rights to sell and remove coal and coke from the Acme Plant is currently the sole asset of OPG, representing its only course of possible income.

6.      On or about November 9, 2006, OPG and MLL appointed MLL as OPG's agent for the recovery of "all coal or coke which may be recovered and marketed economically." Executed copies of the documents (hereinafter "Agency Appointment") so appointing MLL is attached hereto as Exhibit C.   The shipping period under the Agency Agreement was "Approximately November 2006 to May 2007."

2

7.     Thereafter, MLL, pursuant to directions from Brown, materially breached the terms of its agency and its fiduciary obligations as agent for OPG, and damaged OPG, by actions and omissions including the following:

(a)     Because Brown and MLL, contrary to their representations to OPG, could not market the Product, they purported to appoint ICR and Kellerman as sub-agents to market and sell the Product without notification to or consent from OPG.  Brown and MLL had no power to appoint sub-agents.

(b)     On or about September 24, 2007, all of the defendants, acting in concert, sold to DTE Coal Services, Inc., Ann Arbor, Michigan, up to 40,000 tons of coal from the Acme site at the price of $31.00 per ton.  However, the defendants remitted to OPG only $30.00 per ton, as appears from invoice for the transaction, a copy of which is attached hereto as Exhibit D.

(c)     On or about October 9, 2007, ICR and Kellerman purported to issue a purchase order as principal for 40,000 tons of coal and coke to MLL.  Similarly, on November 10, 2007, ICR and Kellerman purported to issue another purchase order as principal for up to 4,000 tons of coal and coke to MLL.  These purported purchase orders were issued to MLL in violation of OPG's rights as owner of the coal and coke.  Copies of the respective purchase orders are attached hereto as Exhibits E and F.

(d)     On or about October 19, 2007, MLL and Brown without prior notice invoiced ICR for coal and coke from the Acme yard in the amount of $111,530.40.  The invoice purported to direct full payment of the invoice amount to MLL, in violation of MLL's obligations as agent and fiduciary.

(e)     Defendants sold numerous shipments from the premises for which they failed to pay OPG.  OPG does not know the sums of payments not remitted by Defendants.  OPG requests that this Court order Defendants to account for sums wrongfully withheld.

(f)     MLL failed to maintain an office onsite with copies of records in violation of the provisions of Paragraph 5 of the Agency Appointment.

(g)     MLL failed to provide insurance certificates to OPG in violation of the provisions of paragraph 7 of the Agency Appointment.

(h)     Brown and MLL sought to sell coal and coke with water and stone added so as to defraud purchasers as to true weight, as shown by Exhibit G hereto.

8.     On or about February 4, 2008, OPG, by its CEO, Conrad Petersen, terminated the Agency Appointment, thus terminating any and all rights or powers which Defendants, or any of them, may have possessed with regard to recovery or sale of coal and coke at the Acme Plant, as

evidenced by email of that date sent from Petersen to MLL and Brown, a copy of which is attached hereto as Exhibit H hereto.

9.    On numerous occasions, subsequent to February 4, 2008, Defendants have interfered with OPG's efforts to sell and remove the coal and coke from the Acme Plant by falsely telling customers that they rather than OPG own the coal and coke.

10.    On May 2, 2008, Conrad Petersen died. His widow, Patricia, succeeded him as CEO of OPG.

11.    Mallard and Brown thereupon intensified and aggravated their actions in attempting to unlawfully appropriate OPG's coal and coke at Acme by conduct including the following:

(a)    Within 12 hours after Conrad Petersen's death, MLL sent a certified letter to Patricia Petersen, demanding additional funds and allowing work to resume and proceed to completion, although MLL's agency had been terminated.

(b)    Defendants are currently soliciting, without authorization, sales to potential customers which makes it impossible for OPG to sell product.

(c)    On about July 17, 2008, the attorney for MLL and Brown maliciously interfered with OPG's rights and plans to market the coal through Crown Coal & Coke ("Crown"), Pittsburgh, Pennsylvania, as appears from letter of that date sent by Mark A. Swartz, Esq., a copy of which is attached hereto as Exhibit I. Crown has the ability to sell all of the Product on the premises. However, Crown will not market the Product in the absence of a court order confirming and enforcing OPG's rights. An e-mail from Crown dated August 11, 2008, confirms that Defendants' actions are making it impossible for Plaintiff to market the coal and coke.

12.    Customers and potential customers are unwilling to purchase the coal and coke without relief from the Court vindicating and enforcing OPG's rights.

13.    Defendants conduct is continuing in nature causing continued damage to Plaintiff's reputation in its industry and resulting in damages difficult to ascertain, in terms of lost revenue at the Acme Plant and lost business.

4

14.    OPG will suffer irreparable damage and requires swift relief form this Court because, in the absence of such relief granted swiftly:

(a) Customers and potential customers are being scared away by the unlawful actions of the Defendants, and as a result are likely not to deal with OPG in the future;

(b) Once demolition of the Acme Plant is completed, OPG will lose its valuable rights to sell the Product, resulting in a loss estimated between 2 and 4 million dollars. The only way for OPG to realize this value is to extract and sell the coal and coke.

(c) Without use of its sole asset and source of income, OPG is unable to operate as a business.

(d) OPG's reputation in the industry in which it practices is being continuously damaged by Defendants conduct.

## COUNT I: CLAIM FOR INJUNCTION

15.    OPG realleges paragraphs 1 through 15 of this Complaint with the same force and effect as if it were set forth verbatim.

16.    If Defendants are not restrained from further interfering with OPG's rights to recover and sell coal and coke, OPG will be unable to realize the full value of its property rights because its rights will terminate on October 21, 2008. Additionally, after October 21, 2008, the weather conditions in Chicago will begin to become incompatible with extracting coal and coke from the Acme Plant.

17.    OPG's reputation in the industry in which it practices is being damaged by the continuing actions of the defendants to frustrate their ability to extract and market the coal and coke located at the Acme Plant, and Defendants' claims to third parties that OPG is attempting to extract coal and coke that only Defendants have the rights for.

18.    OPG is threatened with irreparable harm for the reasons alleged aforesaid if this Court will not grant the injunctive relief requested herein.

19.    OPG has no adequate remedy at law.

WHEREFORE, OPG prays that it be granted a preliminary injunction, and permanent injunction, restraining and enjoining the Defendants, and all persons acting in concert and participation with them, from interfering in any manner with OPG's efforts to recover and sell coal and coke from the Acme Plant, that OPG have such other and further relief as is proper, and that OPG recover its cost of suit.

## COUNT II: CLAIM FOR ACCOUNTING

20.    OPG realleges paragraphs 1 through 20 of this Complaint with the same force and effect as if it were set forth verbatim.

21.    Under the terms of the contract between OPG and MLL, MLL was to keep copies of all records pertaining to ACME Plant available for inspection and copying at the Acme Plant site. *See* Exhibit C. MLL failed to do so, and has not made those records available.

22.    Upon information and belief, OPG alleges that Defendants have received substantial sums of money for selling product from the Acme Plant, which monies belong to

6

OPG but were not remitted to OPG. These accounts are complicated, in sole possession of the Defendants, and require relief by way of an accounting which this Court should order.

WHEREFORE, OPG prays that this Court order an accounting of all sums due to it from the Defendants, and upon completion of the accounting, that judgment be entered in favor of OPG and against the Defendants, jointly and severally, for all sums due and owing to OPG, further that OPG have such other and further relief as is proper, and that OPG recover its cost of suit.

## COUNT III: CLAIM FOR SLANDER OF TITLE

23.    OPG realleges paragraphs 1 through 22 of this Complaint with the same force and effect as if it were set forth verbatim.

24.    As alleged aforesaid, Defendants continue to claim to be owners of the coal and coke at the Acme Plant to individuals that OPG is attempting to market this coal and coke.

25.    These claims are false and malicious, and intended to prevent OPG from realizing the value of its rights in the coal and coke at Acme Plant, as well as damage its reputation in the industry in which it practices.

26.    Defendants have no reasonable grounds to believe that they have any continuing interest in the Coal and Coke at Acme Plant.

Wherefore, OPG prays that judgment be entered in its favor against the Defendants, jointly and severally, in an amount to be determined at trial, that OPG have such other and further relief as is proper, and recover its cost of suit.

## COUNT IV:  CLAIM FOR TORTUOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

27.     OPG realleges paragraphs 1 through 26 of this Complaint with the same force and effect as if it were set forth verbatim.

28.     OPG entered into a valid business relationship with Crown in order to market and sell the remaining coal and coke at the Acme Plant after OPG terminated its contract with MLL.

29.     On information and belief, Defendants were aware that OPG had hired Crown to replace them as the marketer/seller of the coal and coke located at the Acme Plant, and that Crown was beginning to develop business relationships with the expectancy of selling the coal and coke.

30.     As alleged aforesaid, Defendants continue to take action preventing Crown from performing its obligations to market the coal and coke, resulting in a diminishing expectancy that it may be able to sell the coal and coke on OPG's behalf, and in the termination of Crown's expectancy to develop certain business relationships to sell the products.

Wherefore, OPG prays that judgment be entered in its favor against the Defendants, jointly and severally, in an amount to be determined at trial, that OPG have such other and further relief as is proper, and recover its cost of suit.

## COUNT V: CLAIM FOR CONSPIRACY

31.     OPG realleges paragraphs 1 through 30 of this Complaint with the same force and effect as if it were set forth verbatim.

32.    The Defendants have conspired and carried out a conspiracy to deprive OPG of its valuable rights to recover and sell Product form the Acme Steel site.

33.    The unlawful conspiracy entered into by Defendants has damaged OPG in an undetermined amount.

34.    OPG is entitled to recover damages against the Defendants for damages caused it by Defendants' conspiracy.

WHEREFORE, OPG prays that judgment be entered in its favor against the Defendants, jointly and severally, in an amount to be determined at trial, that OPG have such other and further relief as is proper, and recover its cost of suit.

## COUNT VI: CLAIM FOR BREACH OF FIDUCIARY DUTIES
## (DEFENDANTS MLL AND BROWN ONLY)

35.    OPG realleges paragraphs 1 through 34 of this Complaint with the same force and effect as if it were set forth verbatim.

36.    OPG and the Defendants had a fiduciary relationship as a result of the agreement they entered into for the purpose of extracting and marketing the coal and coke located at the Acme Plant.

37.    OPG trusted Defendants to conduct "Production, planning, and marketing.... in a manner to best promote the interest of both parties." *See* Exhibit C.

38.    As a result, Defendants owed OPG fiduciary duties such as loyalty, care, and candor.

39.    Defendants violated these fiduciary duties as alleged aforesaid, including but not limited to:

(a)    Brown and MLL, contrary to their representations to OPG could not market the Product, they purported to appoint ICR and Kellerman as sub-agents to market and sell the Product without notification to or consent from OPG. Brown and MLL had no power to appoint sub-agents.

(b)    On or about September 24, 2007, all of the defendants, acting in concert, sold to DTE Coal Services, Inc., Ann Arbor, Michigan, up to 40,000 tons of coal from the Acme site at the price of $31.00 per ton. However, the defendants remitted to OPG only $30.00 per ton, as appears from invoice for the transaction, a copy of which is attached hereto as Exhibit D.

(c)    On or about October 9, 2007, ICR and Kellerman purported to issue a purchase order as principal for 40,000 tons of coal and coke to MLL. Similarly, on November 10, 2007, ICR and Kellerman purported to issue another purchase order as principal for up to 4,000 tons of coal and coke to MLL. These purported purchase orders were issued to MLL in violation of OPG's rights as owner of the coal and coke. Copies of the respective purchase orders are attached hereto as Exhibits E and F.

(d)    On or about October 19, 2007, MLL and Brown without prior notice invoiced ICR for coal and coke from the Acme yard in the amount of $11,530.40. The invoice purported to direct full payment of the invoice amount to MLL, in violation of MLL's obligations as agent and fiduciary.

(e)    Defendants sold numerous shipments from the premises for which they failed to pay OPG. OPG does not know the sums of payments not remitted by Defendants. OPG requests that this Court order Defendants to account for sums wrongfully withheld.

(f)    MLL failed to maintain an office onsite with copies of records in violation of the provisions of Paragraph 5 of the Agency Appointment.

(g)    MLL failed to provide insurance certificates to OPG in violation of the provisions of paragraph 7 of the Agency Appointment.

(h)    Brown and MLL sought to sell coal and coke with water and stone added so as to defraud purchasers as to true weight, as shown by Exhibit G hereto.

WHEREFORE, OPG prays that judgment be entered in its favor against the Defendants, jointly and severally, in an amount to be determined at trial, that OPG have such other and further relief as is proper, and recover its cost of suit.

10

## COUNT VII: CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES (DEFENDANTS ICR AND KELLERMAN ONLY)

40.    OPG realleges paragraphs 1 through 39 of this Complaint with the same force and effect as if it were set forth verbatim.

41.    As stated aforesaid, Defendants MLL and Brown violated the fiduciary duties they owed to OPG.

42.    Defendants ICR and Kellerman, on information and belief, were aware of the relationship between OPG and MLL and Brown, and were aware of their role in breaching the duties owed to OPG by Defendants MLL and Brown.

43.    Despite this knowledge, ICR and Kellerman took substantial steps toward aiding in the breach of duties by accepting the apparent appointment from MLL and Brown to market the coal and coke located at the Acme Plant, without the knowledge of OPG.

WHEREFORE, OPG prays that judgment be entered in its favor against the Defendants Industrial Commodity Resources, LLC and Patrick Kellerman, jointly and severally, in an amount to be determined at trial, that OPG have such other and further relief as is proper, and recover its cost of suit.

Dated:  August 25, 2008

Respectfully submitted,

ONTONAGON POWER GROUP, INC., Plaintiff

By: _____
One of Its Attorneys

Joel J. Sprayregen
Roger J. Kiley
Attorneys for Plaintiff
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Ste. 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-1007
Firm I.D. 29143
1091411_6

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this Complaint are true and correct based on her personal knowledge, and if sworn as a witness could competently testify thereto, except as to matters therein stated to be on information and belief and as to such matters the undersigned as aforesaid that she verily believes the same to be true.

Patricia Petersen
Ontonagon Power Group

12

# RECOVERY AND SALES AGREEMENT

This Recovery and Sales Agreement (the "Agreement"), by and between Ontonagon Power Group ("OPG") and Jabco Industrial Services Company, Inc. ("Jabco"), is effective as of this 5th day of July, 2007.

## RECITALS

**A.**    Salrecon, LLC, a Delaware limited liability company ("Salrecon"), has the demolition contract at the Acme Coke Plant located at 11236 Torrence Avenue, Riverdale, IL (the "Plant"). Pursuant to a letter agreement dated October 11, 2006, Salrecon subcontracted with Jabco for certain demolition and recovery services at the Plant.

**B.**    Pursuant to an agreement between Salrecon and OPG dated October 27, 2006:

(i)    Salrecon conveyed to OPG the recovery and sales rights to the coke and coal material at the Plant (the "Coke" and the "Coal", respectively);

(ii)    The parties agreed to support each other to maximize profits to the best of their abilities.

**NOW, THEREFORE,** for and in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, OPG and Jabco agree as follows:

## I. RECOVERY AND SALES

**A.    Coal and Coke Recovery.**    Jabco shall be the exclusive contractor for the recovery and processing of the Coal and the Coke located at the Plant. For the avoidance of doubt, the parties agree and acknowledge that no deduction shall be made from the Coal Monies or Coke Monies (as each term in defined in Schedule A) before such monies are deposited in the proper escrow account.

**B.    Coal Sales.**    OPG will sell the Coal and deposit the Coal Monies (as defined in Schedule A) from such sales into the Coal Escrow Account (as defined below). OPG and Jabco agree to split the Coal Monies equally, fifty percent (50%) to OPG and fifty percent (50%) to Jabco as agent for Salrecon/Jabco.

**C.    Coke Sales.**    Jabco will sell the Coke and deposit the Coke Monies (as defined in Schedule A) from such sales into the Coke Escrow Account (as defined below). OPG and Jabco agree to split the Coke Monies equally, fifty percent (50%) to OPG and fifty percent (50%) to Jabco as agent for Salrecon/Jabco.

**D.    Pre-Effective Transfers.**    With regard to any Coke and/or Coal sold and/or removed from the Plant prior to the effective date of this agreement (the "Pre-Effective

C.    **Proposed Distribution Notices.**  At least monthly, or more frequently as required by Paragraphs A and B of this Article II, each of the Coal Escrow Agent and the Coke Escrow Agent shall circulate a written proposed distribution schedule that shall set forth the amounts to be distributed pursuant to this Article II (each such schedule, a "**Proposed Distribution Notice**"). Unless a party objects in writing within 3 days, a Proposed Distribution Notice shall be deemed accepted and the escrow agent shall disburse funds accordingly. Each of the Coal Escrow Agent and the Coke Escrow Agent shall be held harmless and indemnified by OPG and Jabco against any and all claims if distributions are made according to the Proposed Distribution Notice.

D.    **Jabco as Salrecon's Agent; Indemnity of OPG.**  Pursuant to a separate agreement between Jabco and Salrecon, Jabco is acting as Salrecon's agent with regard to the receipt of funds from the Coal Escrow Account to Jabco as agent for Salrecon/Jabco shall discharge any and all obligations with regard to such funds as between OPG and Salrecon. Upon transfer of funds to Jabco, Jabco undertakes the responsibility for the appropriate division and distribution of funds to Salrecon. Jabco agrees to indemnify and hold harmless OPG, the Coal Escrow Agent, and any of their respective directors, officers, employees, agents, interest holders, or affiliates, from any and all claims made by Salrecon regarding Coal Monies.

E.    **Indemnity of Jabco**  Payment of funds from the Coke Escrow Account to OPG shall discharge any and all obligations with regard to such funds as between Jabco and any third parties. With respect to any and all claims made by third parties who are asserting rights as agents or assignees of OPG, OPG agrees to indemnify and hold harmless Jabco, the Coke Escrow Agent, and any of their respective directors, officers, employees, agents, interest holders, or affiliates, from any and all claims made by such third parties.

F.    **Disputes.**  In the event of a dispute regarding the Coal Monies, the Coke Monies, or the deposit, management, or disbursement of funds in the Coal Escrow Account or in the Coke Escrow Account, the parties hereby agree to submit the matter to arbitration as described below in Article III.

## III.    ARBITRATION

A.    All controversies, disputes or claims arising in connection with, from or with respect to this Agreement which are not resolved within fifteen (15) business days after either party shall notify the other in writing of such controversy, dispute or claim, shall be submitted for arbitration to the Chicago office of the American Arbitration Association ("AAA") under its commercial arbitration rules ("**Rules**"), with the arbitration proceeding to be conducted in the English language in Chicago, IL, U.S.A.

B.    The commencement of arbitration pursuant to this Article III shall not cause, or be used as grounds to justify or excuse, either (x) work stoppage at the Plant or (y) deviation from

3

the Article II procedures for the flow of funds. The parties intend and agree that Article I and Article II continue to govern the relationship of the parties throughout the term of this Agreement.

    **C.**     All costs related to arbitration under this Article III shall be shared 50/50 by QPG and Jabco, without regard to the ultimate disposition of such arbitration or any determination or admission of fault by a party.

    **D.**     Such arbitration proceedings shall be conducted before a panel of three (3) arbitrators and, except as otherwise provided in this Agreement, shall be conducted in accordance with the Rules. QPG and Jabco shall each appoint one arbitrator and the two arbitrators so appointed shall appoint a third arbitrator to act as Chairman of the tribunal. If a party fails to nominate an arbitrator within thirty (30) days from the date when the claimant's Request for Arbitration has been communicated to the respondent, such appointment shall be made by the AAA. The two arbitrators thus appointed shall attempt to agree upon the third arbitrator to act as Chairman. If said two arbitrators fail to nominate the Chairman within thirty (30) days from the date of appointment of the second arbitrator to be appointed, the Chairman shall be appointed by the AAA.

    **E.**     The arbitrators shall have the right to award or include in their award any relief which they deem proper under the circumstances, including without limitation, money damages (with interest on unpaid amounts from date due), specific performance, injunctive relief, attorneys' fees, costs and expenses. The arbitrators shall issue a written opinion explaining the reasons for their decision and award. The award and decision of the arbitrator shall be conclusive and binding upon all parties hereto and judgment upon the award may be entered in any court of competent jurisdiction. The parties acknowledge and agree that any arbitration award may be enforced against either or both or them in a court of competent jurisdiction and each waives any right to contest the validity or enforceability of such award. The parties further agree to be bound by the provisions of any statute of limitations which would be otherwise applicable to the controversy, dispute or claim which is the subject of any arbitration proceeding initiated hereunder. The parties further agree that in connection with any such arbitration proceeding each shall file any compulsory counterclaim (as defined under the Rules) within thirty (30) days of the date of the filing of the claim to which it relates.

    **F.**     Without limiting the foregoing, the parties shall be entitled in any such arbitration proceeding to the entry of an order by a court of competent jurisdiction pursuant to an opinion of the arbitrator for specific performance of any of the requirements of this Agreement. This provision shall continue in full force and effect subsequent to and notwithstanding expiration or termination of this Agreement.

## IV. TERM AND TERMINATION

    **A.**     **Term.** This Agreement shall commence as of the date first written above and shall remain in effect until the recovery and sale of all Coal and Coke is completed.

4

B.   **Termination.** In the event of a breach of a provision of this Agreement, the non-breaching party shall, upon 10 days written notice to the breaching party, have a right to terminate the Agreement, provided that the breaching party has a right to attempt to cure such breach to the satisfaction of the non-breaching party within the 10 day period. Any dispute as to what constitutes a breach, or the sufficiency of the cure, shall (if not resolved by agreement between the parties) be submitted to arbitration as provided above.

C.   **Survival of Article II.** No termination of this Agreement pursuant to this Article IV shall extinguish the rights or obligations of the parties or the duties of the escrow agents pursuant to Article II.

## V.   MISCELLANEOUS

A.   **Assignment.** Neither party shall assign this Agreement or any rights or obligations hereunder, by operation of law or otherwise, without the prior written consent of the other party.

B.   **Governing Law; Forum Selection.** This Agreement shall be governed by the laws of the State of Illinois, without reference to its conflict of laws principles. All disputes arising out of this Agreement between the parties shall be subject to the exclusive jurisdiction and venue of the Illinois state courts of Cook County, Illinois, and the parties consent to the personal and exclusive jurisdiction of these courts.

C.   **Severability.** Any term or provision of this Agreement held to be illegal or unenforceable shall, if possible, be interpreted so as to be construed as valid, but in any event the validity or enforceability of the remainder hereof shall not be affected.

D.   **Waiver.** The waiver of, or failure to enforce, any breach or default hereunder shall not constitute the waiver of any other or subsequent breach or default.

E.   **Relationship of Parties.** Nothing herein shall be deemed to create any agency, joint venture, or partnership relationship between the parties. Neither party shall have the right to bind the other to any obligation, nor have the right to incur any liability on behalf of the other.

F.   **Entire Agreement.** This Agreement sets forth the entire agreement between the parties and supersedes any and all prior proposals, agreements, and representations between them, whether written or oral. This Agreement may be changed only by mutual agreement of the parties in writing.

G.   **Counterparts.** This Agreement may be executed simultaneously in two or more counterparts, each of which will be considered an original, but all of which together will constitute one and the same instrument.

H.   **Attorney's Fees.** In addition to the other remedies provided for in this Agreement, in the event legal action is instituted by one of the parties to enforce the terms of this

5

Agreement. the prevailing party in such action shall be entitled to recover its attorney's fees and court costs from the non-prevailing party in such action.

    I.    **Section Headings.** The section headings throughout this Agreement are for convenient reference only, and shall in no way be deemed to limit, modify, or add to the interpretation, construction or meaning or any provision of this Agreement.

    J.    **Force Majeure.** Except for obligations to pay money, neither party shall have the responsibility for any delay or failure of performance resulting from causes beyond its reasonable control and without its fault or negligence. In such event, the delayed party shall perform its obligations hereunder within a reasonable time after the cause of the delay or failure has been remedied.

    K.    **Notarization of Signatures.** It is contemplated that this Agreement will be executed via counterpart and facsimiles of the three copies of the signed Agreement, one signed by each signatory, will, collectively, represent the same instrument. In addition, all signatories to this Agreement agree to furnish and provide to the other signatories a notarized signature on the signature page, as soon as practicable but in no event more than ten (10) days from the effective date of this Agreement. This provision is a material component of the Agreement.

**[SIGNATURE PAGE FOLLOWS]**

Jul-05-07  15:56      From-

Transfers"), Jabco will provide (or cause to be provided) to OPG a full and accurate accounting, including (but not limited to), price and payment terms, identity and location of buyer(s), shipper(s) and any other relevant parties, and any other documentation OPG deems necessary. Jabco agrees to work in good faith to provide OPG with any needed information with respect to the Pre-Effective Transfers. All monies from the Pre-Effective Transfers will be split equally, fifty percent (50%) to OPG and fifty percent (50%) to Jabco as agent for Sairecon/Jabco.

   E.    Access to Plant.  Jabco will provide (or cause to be provided) full and unrestricted access to the Plant to OPG and its designees and agents during regular or normal business hours.  OPG shall provide to Jabco proof of insurance naming Jabco as additional insured.

   F.    Coal Blends.  OPG or its agent or representative shall be on site or on call to instruct or direct Jabco regarding the proper "coal blends" required by OPG's coal customer.

   G.    Documentation.  Both OPG and Jabco agree to provide full documentation of all information related to the sale of the Coal and Coke to the other party, so as to allow both parties to assess the timing and size of deposits into the Coal Escrow Account and Coke Escrow Account, respectively.

## II.  ESCROW ACCOUNTS

   A.    Coal Escrow Account.  OPG will establish an escrow account in connection with the Coal Monies (the "Coal Escrow Account").  Wire transfers and checks received in connection with Coal Monies will be wired directly or deposited by check into the Coal Escrow Account.  No amounts will be deducted or held back from the Coal Monies and the full Coal Monies shall be timely deposited into the Coal Escrow Account.  The Coal Escrow Account shall be managed by Joel Sprayregen, Esq., ("Coal Escrow Agent") and he shall have sole control of and power of direction with regard to the funds in the Coal Escrow Account.  The funds due to Jabco will be transferred within 15 days of deposit in the Coal Escrow Account.  In the event the account balance is less than $10,000, the Coal Escrow Agent shall have the right, but not obligation, upon notice to all parties, to hold the funds in the escrow account until the next scheduled disbursement.

   B.    Coke Escrow Account.  Jabco will establish an escrow account in connection with the Coke Monies (the "Coke Escrow Account").  Wire transfers and checks received in connection with Coke Monies will be wired directly or deposited by check into the Coke Escrow Account.  No amounts will be deducted or held back from the Coke Monies and the full Coke Monies shall be timely deposited into the Coke Escrow Account.  The Coke Escrow Account shall be managed by James Lanting, Esq., ("Coke Escrow Agent") and he shall have sole control of and power of direction with regard to the funds in the Coke Escrow Account.  The funds due to OPG will be transferred within 15 days of deposit in the Coke Escrow Account.  In the event the account balance is less than $10,000, the Coke Escrow Agent shall have the right, but not obligation, upon notice to all parties, to hold the funds in the escrow account until the next scheduled disbursement.

2

## Schedule A
## Computation of Coal Monies and Coke Monies

**With regard to the Coal:**

The **Coal Gross Sales Price** shall be Thirty Dollars ($30.00) per ton. From the Coal Gross Sales Price, Seven Dollars ($7.00) per ton (the "**Coal Recovery Fee**") shall be payable to Jabco, in consideration of recovery operations with respect to the Coal (including screening, retrieval, sorting, processing, loading and related costs), for a net sales price of Twenty-Three Dollars ($23.00) per ton (the "**Coal Net Sales Price**"). For a given amount of Coal, the Coal Net Sales Price multiplied by the number of tons of Coal sold shall be defined as the **Coal Monies**. The Coal Monies shall be split 50/50 between OPG and Jabco as agent for Salrecon/Jabco, as provided in Article I.

**With regard to the Coke:**

Recovery of the Coke at the Plant shall yield Nut Coke and Coke Fines.

The **Nut Coke Gross Sales Price** shall be Fifty Dollars ($50.00) per ton. From the Nut Coke Gross Sales Price, Two Dollars and Fifty Cents ($2.50) per ton (the "**Coke Recovery Fee**") shall be payable to Jabco, in consideration of recovery operations with respect to the Coke (including screening, retrieval, sorting, processing, loading and related costs), for a net sales price of Forty-Seven Dollars and Fifty Cents ($47.50) per ton (the "**Nut Coke Net Sales Price**"). For a given amount of Nut Coke, the Nut Coke Net Sales Price multiplied by the number of tons of Nut Coke sold shall be defined as the **Nut Coke Monies**.

The **Coke Fines Sales Price** shall be Forty Dollars ($40.00) per ton. For a given amount of Coke Fines, the Coke Fines Sales Price multiplied by the number of tons of Coke Fines sold shall be defined as the **Coke Fines Monies.**

All Nut Coke Monies and Coke Fines Monies shall, collectively, be defined as the **Coke Monies.**

The Coke Monies shall be split 50/50 between OPG and Jabco as agent for Salrecon/Jabco, as provided in Article I.

8

Agreement, the prevailing party in such action shall be entitled to recover its attorney's fees and court costs from the non-prevailing party in such action.

I.    **Section Headings.** The section headings throughout this Agreement are for convenient reference only, and shall in no way be deemed to limit, modify, or add to the interpretation, construction or meaning or any provision of this Agreement.

J.    **Force Majeure.** Except for obligations to pay money, neither party shall have the responsibility for any delay or failure of performance resulting from causes beyond its reasonable control and without its fault or negligence. In such event, the delayed party shall perform its obligations hereunder within a reasonable time after the cause of the delay or failure has been remedied.

K.    **Notarization of Signatures.** It is contemplated that this Agreement will be executed via counterpart and facsimiles of the three copies of the signed Agreement, one signed by each signatory, will, collectively, represent the same instrument. In addition, all signatures to this Agreement agree to furnish and provide to the other signatories a notarized signature on the signature page, as soon as practicable but in no event more than ten (10) days from the effective date of this Agreement. This provision is a material component of the Agreement.

## [SIGNATURE PAGE FOLLOWS]

6

IN WITNESS WHEREOF, the parties have executed this Recovery and Sales Agreement by their respective authorized representatives effective as of the date first above written.

ACCEPTED AND AGREED BY:

ONTONAGON POWER GROUP

By: _____
    CONRAD PETERSEN, PRESIDENT
Date: _7-6-07_____

JABCO INDUSTRIAL SERVICES CO., INC.

By: _____
    GLENN POKROPINSKI, PRESIDENT
Date: _____

ACKNOWLEDGED AND RATIFIED BY:

SALRECON, LLC

By: _____
    MICHAEL URKUSTE, SOLE MEMBER
Date: _____

7

October 27, 2006

This is an agreement between Salrecon, LLC and Ontonagon Power Group.

Salrecon, LLC has the demolition contract at the Acme Coke Plant- located at 11236 Torrance Avenue, River Dale, IL. Salrecon has conveyed to Ontonagon Power Group the rights for the recovery and the sales of the Coal and Coke material at the Acme Plant.

Both parties agree to support each other to maximize profits to the best of their abilities.

Ontonagon Power Group agrees to provide Salrecon. LLC with all sales and contract documentation and to make available any other information information related to the sales of said material upon request from Salrecon.

Ontonagon Power Group
Conrad Petersen


Salrecon, LLC
Mike Urioste
Single Member

May-30-07 16:57    From-                                    T-487  P.05/85  F-321

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

JOEL SPRAYREGEN C/O SHEFSKY
111 E. WACKER DRIVE
SUITE 2800
CHICAGO, IL 60601

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 06:16 PM 05/24/2007
INITIAL FILING # 2007 1969418

SRV: 070610648

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SALRECON, LLC | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| R.R. 1 BOX 370 | CHARLESTON | | SC | 25312 | USA |
| 1d. TAX ID # | ADD'L INFO RE ORGANIZATION | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION DE | 1g. ORGANIZATIONAL ID # 3272744 | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| IABCO INDUSTRIAL SERVICES COMPANY | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2710 STATE STREET | CHICAGO HEIGHTS | | IL | 60411 | USA |
| 2d. TAX ID # | ADD'L INFO RE ORGANIZATION | 2e. TYPE OF ORGANIZATION CORP | 2f. JURISDICTION OF ORGANIZATION IL | 2g. ORGANIZATIONAL ID # 63457469 | NONE |

3. SECURED PARTY'S NAME

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ONTONAGON POWER GROUP | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 15431 N. PEBBLE LANE | FORT MYERS | | FL | 33912 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ALL RIGHTS FOR THE RECOVERY AND THE SALES OF THE COAL AND COKE MATERIAL AT
THE ACME COKE PLANT LOCATED AT 11236 TORRANCE AVENUE, RIVERDALE, IL, PURSUANT
TO A CERTAIN AGREEMENT BY AND BETWEEN SALRECON, LLC AND ONTONAGON POWER
GROUP DATED OCTOBER 27, 2006.

8. OPTIONAL FILER REFERENCE DATA
FILE WITH DE AND IL SECRETARY OF STATE OFFICES

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

P.O. Box 1382
St. Albans, WV 25177

**Mallard LLC**
Tel 304-722-2184
Fax 866-746-8780

To:  Ontonagon Power Group Inc
    15341 N. Pebble Lane,
    Fort Meyers, Fl. 33912
    Attn: Mr. Conrad Petersen
    Tel 239-415-4100

Sales Confirmation: #S103006-1
PO#
Date: 10-30-06

Ref: ACME Coke Plant
    11236 Torrance Ave.
    Riverdale, Ill.
    (Coal Yard Site)

**Coal Description:** LV Coal – ACME Coke Plant storage yard residue.

**Quantity:**        All coals or coke which may be recovered and marketed economically.

**Shipping Period:** Approximately November 2006, to May 2007.
          (Or previous if all economically feasible coal has been recovered

**Premium / Penalties: NA**

**Terms of Payment:** Payments to be made Friday following week of loading by wire transfer or certified funds to (Jointly established bank escrow account)
40% of gross to Mallard LLC & 60% of gross to Ontonagon Power Group.

**Remarks:** Weight to be determined by certified scales at delivery point or other such point as may be mutually agreeable.

**Subject to addenda, if any, and to the attached terms and operational agreement.**

**Mallard LLC**

By: _W. Douglas Brown_
W. Douglas Brown, Managing Member, LLC

By: _Conrad Petersen_    Ontonagon Power Group

**Mallard Leasing, LLC**
PO Box 1382, St. Albans, WV



# Memo

1-of-2
ATTACHMENT

**To:**   Ontonagon Power Group, Inc (OPG)

**From:**   Mallard Leasing, LLC   (MLL)

**CC:**

**Date:**   October 26, 2006

**Re:**   Operating terms and conditions for Coal Yard Operations, Acme Steel & Coke, 11236 Torrance Ave., Riverdale, ILL. (Coal Yard Site)

---

**Mallard Leasing:**

1. MLL will commence coal recovery operations at the East Chicago Site within thirty days or less from the date of the agreement, or upon completion of on site contractor completing environmental remediation process.

2. Production, planning and marketing by MLL will be done in a manner to best promote the interest of both parties.

3. MLL will have sole discretion for the production and marketing of all coal recovered from the site.

4. MLL will be responsible for all production and marketing costs related to the recovery of the coal from the site. All daily production operations will be supervised by MLL on site personnel.

5. MLL will maintain an office on site and will maintain copies of all records including bills of ladings, truck weigh tickets, etc. and such records will be available for inspection and copying.

6. MLL and OPG will each receive 40% / 60% respectively of the selling price of the coal produced and sold from the site. Wire transfers and checks for payment of coal produced and sold from the site will be deposited by check or wired direct to an escrow account which will be set up for receipt of same. MLL and OPG shall have joint custody of the bank escrow account, requiring both signatures for withdrawal. (Coal sales most generally will be set up on a Friday following payment schedule, however, certain company's may have payment methods and payment cycles which may vary from the Friday following schedule.) Payment schedules which vary from Friday following will be indicated to all pertinent parties.

1

7. MLL shall previous to commencement of any recovery operations by MLL or its contractors, shall cause insurance (liability) certificates to be provided to OPG or its designated assignee. Mallard shall hold harmless OPG from all accidents which may occur on the site from daily operations of coal recovery.

8. All personnel of MLL and its contractors shall conform to the minimum safety requirements per OSHA for the jobsite.

9. MLL's only obligation under the agreement is for the recovery of economically feasible coal from the site and once completed all responsibility to the agreement and site shall cease.

10. MLL & OPG shall cause a contingency fund set aside from gross proceeds of coal sales to be established at the rate of (2.5%, two and one half percent, of gross, as received). Contingency fund shall be funded at the rate of 40% from MLL and 60% from OPG. Contingency fund shall cap at $250,000.00 max. The total amount of the contingency fund at the completion of the marketable coal recovery operation shall be returned to MLL and OPG respectively minus any withdrawals from contingency fund for approved remediation or other jointly agreed to use of contingency fund monies for completion of Marketable coal recovery operations. Account shall be set up with MLL & OPG & Culp Trading signature requirement. Disposition of funds shall be within 30 calender days of completion of Coal recovery operation.

## Ontonagon Power Group:

1. OPG will provide documentation of the chain of title for the coal recovered from the site in East Chicago. This must be clear and unequivocal and will be required previous to commencement of any recovery or marketing operations.

2. OPG will guarantee title to the coal and will hold Mallard harmless for any fault that may occur in the chain of title after the coal recovery operations have commenced at the site.

3. OPG will allow Mallard to operate under all required demo permits for its recovery of coal from the site. Under the demo permit this should be considered as part of the clean up operations.

4. (ACME Steel & Coke / land owner) will have responsibility for all reclamation and environmental issues and costs, previously existing or current on the site (ACME Steel & Coke / land owner). MLL shall only be held responsible for clean up and or remediation of environmental concerns which thru its operations only may occur. After all coal recovery operations have ceased Mallard will rough grade the property per disturbed area from coal recovery.

Mallard LLC_____    Position _____

Date:_____

OPG _____    Position _____

Date: 11-9-06  5:00pm

● Page 2

Mallard Leasing, LLC

107-A Morris St.
Charleston, WV 25301

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/19/2007 | 640-ICR |

**Bill To**

Industrial Commodity Resources, LLC
1010 North Preserve Ct
Wichita, Kansas 67207

**Ship To**

Load Truck, ACME Coke Yard

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| 2007900 | 7 Days | | 10/18/2007 | PNC Trucking | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 543.98 | 001-ICR | Reclaim Coal 2x0 from ACME Hauled 10-10-07 Total of 30 Trucks | 30.00 | 16,319.40 |
| 109.09 | 001-ICR | Reclaim Coal 2x0 from ACME Hauled 10-11-07 Total of 6 Trucks | 30.00 | 3,272.70 |
| 897.84 | 001-ICR | Reclaim Coal 2x0 from ACME Hauled 10-15-07 Total of 47 Trucks | 30.00 | 26,935.20 |
| 759.16 | 001-ICR | Reclaim Coal 2x0 from ACME Hauled 10-16-07 Total of 39 Trucks | 30.00 | 22,774.80 |
| 693.81 | 001-ICR | Reclaim Coal 2x0 from ACME Hauled 10-17-07 Total of 34 Trucks | 30.00 | 20,814.30 |
| 713.8 | 001-ICR | Reclaim Coal 2x0 from ACME Hauled 10-18-07 Total of 36 Trucks | 30.00 | 21,414.00 |

Thank you for your business, if you have any questions please call (304) 722-2184.

| Total | $111,530.40 |
|-------|-------------|

DTE Coal Services, Inc.
414 S. Main Street, Suite 200
Ann Arbor, MI 48104
T (734) 887-2211 F (734) 887-2248

*1st*



**DTE Energy**

*DTE Coal Services*

## Coal Purchase Agreement

**Agreement Date:** September 24, 2007

| | | | |
|---|---|---|---|
| **Seller:** | Mallard Leasing, LLC<br>1701 A Morris Street<br><br>Charleston, WV 25301 | **Buyer:** | DTE Coal Services, Inc.<br>414 S. Main Street,<br>Suite 200<br>Ann Arbor, MI 48104 |

| | | | |
|---|---|---|---|
| **Seller Contact:** | Doug Brown | **Buyer Contact:** | John Grantham |
| **Seller Phone No.:** | (304) 722-2184 | **Buyer Phone No.:** | (734) 887-2207 |
| **Seller Fax:** | ( | **Buyer Fax:** | (734) 887-2056 |

**Broker:** Each party represents to the other that it has not retained or employed any broker in connection with this sale.

**Description of Commodity:** Reclaimed metallurgical coal from Acme Steel Chicago Coke Plant, substantially free of dirt, debris and other extraneous materials and meeting Specifications set forth below. Seller to screen coal to 3/8" x 0" and to pass coal under magnet to remove any magnetic materials.

**Contract Term:** On or about October 1, 2007 through December 31, 2007

**Contract Price:** $31.00 / ton

**Contract Quantity:** Entire output of Seller's reclamation activities at Acme Steel site up to maximum of 40,000 tons.

**Contract Shipment:** Approximately ratable monthly truck shipments during the Contract Term. Buyer responsible for truck haulage.

**Delivery Point:** FOB Buyer's truck at Acme Steel site.

**Specifications:**

| Specifications | Typical | | Rejection Limits |
|---|---|---|---|
| BTU/LB. | 11,250 | < | NA |
| SO2 (% by weight) | 0.7 | > | 1.0 |
| MOISTURE (% by weight) | 11.5 | > | NA |
| ASH | 13.35 | > | NA |
| VOLATILE MATTER (% by weight) | 20.0 | > | NA |

**BTU Adjustment:** For any shipment with average BTU/lb. less than 11,000, Contract Price will be reduced by $ 0.25/ton for every 100 BTU/lb. below 11,000 BTU/lb. fractions pro rata.

**Scheduling:** At Buyer's discretion with reasonable notice to Seller.

**Weights:** By certified truck scales at DTE Chicago Fuels Terminal. Buyer to provide weights by shipment to Seller. Buyer responsible for the costs associated with weighing of shipment.

**Sampling and Analysis:** Representative samples will be collected by Seller during screening and stockpiling of material and at the time that trucks are being loaded. Analysis shall be performed by SGS or another mutually acceptable independent laboratory in accordance with ASTM standards

*Mallard_Leasing_-_Coal_Purchase_Agreement*

DTE Coal Services, Inc.
414 S. Main Street, Suite 200
Ann Arbor, MI 48104
T (734) 887-2211 F (734) 887-2248

with the cost for such sampling and analysis for Seller's account. Such analyses, averaged as stated below, shall be final and binding and govern for payment. Seller shall cause laboratory to provide analysis to Buyer simultaneously with Transmission to Seller, but in no event less than 24 hours before loading of shipment (on stockpile samples) and no more than 24 hours after loading of shipment (on truck samples).

**Rejection Limits:**
Buyer may reject any delivery of coal that exceeds the Rejection Limits stated in the Specifications, or which based on visual inspection contains any extraneous material ("Non-Conforming Coal"). Seller shall be responsible for cost of disposal of Non-Conforming Coal, including, without limitation, reasonable transportation and handling charges, such as mileage, demurrage, costs for any use of equipment, unloading and reloading charges, and any other reasonable direct costs or charges otherwise incurred by Buyer.

**Suspension:**
In the event of any delivery of Non-Conforming Coal (whether or not Buyer exercises its right to reject), Buyer may suspend further deliveries until Seller provides adequate assurances that future shipments will conform to Specifications and Commodity Description and may withhold any payments due Seller pending determination whether Buyer has sustained any damages to be offset as provided below. Suspension may be by written or other notice to Seller, but any non-written notice shall be followed by written confirmation within two (2) business days.

**Payment Terms:**
Seller shall invoice Buyer no later than 10th day after end of each calendar month in which deliveries occur. Seller's invoice shall include BTU Adjustment.

Buyer shall pay each invoice within 30 days after receipt. Seller may offset any damages owed Seller by Buyer from any payment. In event of any dispute as to invoice amount, Buyer shall notify Seller in writing and Buyer may withhold disputed portion of payment pending resolution of dispute.

**Limitation of Damages:**
In no event shall Buyer's damages recoverable for delivery of Non-Conforming Coal exceed an amount equal to $20/ton times the number of tons delivered under this Agreement.

**Special Provisions:**
Parties recognize that failure of coal to conform to Specifications and/or Commodity Description above may result in Buyer sustaining additional costs and expenses such as demurrage, extra loading, unloading, and handling costs, equipment damage, and claims from carriers and/or customers.

**Other Special Provisions:** No modifications to this Confirmation or to the Additional Terms and Conditions are effective unless and until agreed to in writing by the parties.

Mallard Leasing, LLC                          DTE Coal Services, Inc.

By:_____                            By:_____
Name:_____                            Name:_____
Title:_____                          Title:_____
Date:_____                           Date:_____

*Mallard Leasing - Coal Purchase Agreement*

DTE Coal Services, Inc.
414 S. Main Street, Suite 200
Ann Arbor, MI 48104
T (734) 887-2211 F (734) 887-2248

## ADDITIONAL TERMS AND CONDITIONS

1.  **ASSIGNMENT.**  Neither party shall assign this Agreement without the prior written consent of the other party, which consent may not be unreasonably withheld or delayed.

2.  **NO WAIVER.**  Waiver of any breach of this Agreement shall not be construed as a waiver of any other breach.

3.  **GOVERNING LAW.**  THIS AGREEMENT SHALL BE CONSTRUED AND GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW.

4.  **WAIVER OF JURY TRIAL.**  Each Party herein waives its respective right to any jury trial with respect to any litigation arising under or in connection with, this Agreement or any Transaction.

# Purchase Order - Industrial Commodity Resources, LLC

Order Number: 2007900

Order Date: October 9th, 2007

Fax Invoices/Manifest to (316) 218-9397
to:
Industrial Commodity Resources, LLC
1010 North Preserve Ct
Wichita, Kansas 67207f

Ship To: Load Truck, Acme Coke Yard

To:    Mallard Leasing, Inc.
       107 Morris Street, IL.
       Charleston, WV 25301
       Attention: Mr. Doug Brown

| | |
|---|---|
| Confirmed To: | Mr. Doug Brown |
| ICR Tax Id #: | 20-1652470 |
| Required Date: | Starting October 10th through December 31st, 2007 |
| Material: | 2 x 0 reclaimed coal – Acme Coke Yard |
| Volume: | Up to 40,000 NT's |
| Terms: | Wire Transfer within 7 days after receipt of invoice. Instructions: Citizen's Financial Bank 13323 South Baltimore Chicago, IL 60633 ABA 271974033 Account No: 21110537 |
| Ship Via: | Bulk End Dump Truck (Provided by PNC Trucking) |
| F.O.B. Price: | $30.00/USNT Chicago, IL. (Acme Coke Yard) |
| Freight: | For the account of Industrial Commodity Resources Customer. |
| Other: | It is recognized and agreed that this contract between Mallard Leasing, Inc. and Industrial Commodity Resources, LLC (ICR) is a "pass though" to contract #2007-101007 (referred to as Recipient). ICR will provide the day-to-day responsibilities of scheduling and invoicing with the Recipient. However, Mallard Leasing shall adhere and be held accountable and responsible to the terms and conditions in the Recipient's contract with Industrial Commodity Resources, dated 10-08-07, and attached to this PO. ICR shall not be held directly responsible for any quality, or quantity issues that arise from this contract with the Recipient. |

Total Estimated Charges:        $1,200,000.00

P.O. Number Must Be Referenced On Each Invoice.

ICR Signature: _____

Mallard Leasing Signature: _____

# Purchase Order - Industrial Commodity Resources, LLC

Order Number: 2007930

Order Date: November 10th, 2007

Fax Invoices/Manifest to (316) 218-9357
to:
Industrial Commodity Resources, LLC
1010 North Preserve Ct
Wichita, Kansas 672076

| | | Ship To: Load Truck, Acme Coke Yard |
|---|---|---|

**To:** Mallard Leasing, Inc.
107 Morris Street, IL.
Charleston, WV 25301
Attention: Mr. Doug Brown

**Confirmed To:**  Mr. Doug Brown

**ICR Tax Id #:**  20-1652470

**Required Date:**  Starting the week of November 12th through December 31st, 2007.  Dates could be extended into 2008 subject to customer usage, product availability and loading.

**Material:**  1" x 4" reclaimed coke – Acme Coke Yard

**Volume:**  Up to 4,800 NT's

**Terms:**  Wire Transfer the following Friday after each weeks shipments.  On average, payment will be net 10 days after receipt of invoice.
Instructions:
Citizen's Financial Bank
43223 South Baltimore
Chicago, IL 60633
ABA 271974033
Account No: 21110537

**Ship Via:**  Bulk End Dump Truck (Provided by US Bulk or similar carrier)

**F.O.B. Price:**  $170.00/US/NT Chicago, IL. (Acme Coke Yard)

**Freight:**  For the account of Industrial Commodity Resources Customer.

**Other:**  Shipments are subject to ongoing quality approval by ICR and it's Client. Debris, such as stone, wire and other non-carbon materials, shall be removed at the Acme reclaim site prior to loading of trucks.  ICR acknowledges that the material will not be declared 100% free of contaminants, but also acknowledges that Mallard Leasing will make best efforts to provide a clean material suitable for it's client.

**Total Estimated Charges:**  $594,000.00

P.O. Number Must Be Referenced On Each Invoice.

ICR Signature: _____  11-10-07

Mallard Leasing Signature: _____  11-10-07

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT -- CHANCERY DIVISION

ONTONAGON POWER GROUP, INC. a
Michigan corporation,

        Plaintiff,

          v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,

        Defendants.

Case No.

## AFFIDAVIT OF ROBERT SHEPARD

Robert Shepard, being first duly sworn, on oath, deposes and says as follows:

1.      I am _E.V.P._ of the Crown Coal and Coke Company ("Crown"), a sales agent for furnace and foundry coke and also metallurgical and steam coal.

2.      I have personal knowledge of the facts set forth in this Affidavit.

3.      On or about _July 15, 2008, Ontonagon Power Group ("OPG") appointed Crown as the marketing agent for carbon materials on site at the ACME Coke Plant, located at 11236 Torrance Avenue, Riverdale, Illinois. (Attach contract?)

4.      Since being appointed by OPG, Crown has pursued various marketing options and issued offers for the sale of coal and Coke from the ACME site.

5.      Since issuing these offers, Crown has encountered continual interference in its efforts to market coal and coke from the ACME site from Mallard Leasing, LLC ("MLL"), and its agents.

6.      Potential purchasers who have received our marketing materials and/or offers, have reported to us that MLL is claiming that they are the only entity entitled to

market coal and coke from the ACME site. These potential purchasers are confused by these claims from MLL, and have indicated they will not move forward with any contracts for materials from the ACME site until this apparent conflict is resolved.

7.     As recently as last week, a potential purchaser informed me that a representative of MLL sent him a copy of a contract granting him rights to the coal located at the ACME facility, and this document was a titled a "Memo."

8.     The actions of MLL have caused great confusion among the potential purchasers of coal and coke from the ACME plant that Crown is attempting to market to, resulting in delays of orders, and potentially lost sales.

9.     Further, Affiant says naught.

_____
Robert Shepard

Signed and sworn to before me this _18th_ day of August, 2008

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Theresa Marie Lorenz, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Aug. 29, 2010
Member, Pennsylvania Association of Notaries

**Subject:** Re: #2 BOOK4A & STMT #2007ML - YTD/AFD-SHEET
**From:** cpetersen <opgroup@comcast.net>
**Date:** Mon, 04 Feb 2008 19:48:47 -0500
**To:** mallardleasing@aol.com

Dear Doug ,
No matter what Tracy says OPG has LIENS and is OWNER of the coal and coke @ the ACME site .
You were assigned the right to the SALE of coal and coke at the ACME site - as long as
you perform to our agreement . Be advised due to your actions (ref. 11-02 e-mail addition of extenders)
and your lack of performance , office on site , proper insurance , failure to provide B.O.L./ and all
coal contracts have been canceled . Your sales services are no longer required by OPG and all contracts
signed or verbal have been voided .

I do not want anymore correspondence  sent to OPG from Tracy UNLESS
it has your signature . I no longer  have the time or patience for inaccurate statements..


Thank you
Conrad Petersen
CEO
Ontonagon Power Group



mallardleasing@aol.com wrote:

  Patti,

  Mallard Leasing LLC requires a copy of all invoices for any coal or coke products sold at ACME.
  Mallard Leasing is owner of record for all coal and coke on the ACME site per various documents.
  Please insure invoices are attached accordingly.


  Mallard Leasing, LLC
  (304) 722-2184 Office
  (866) 746-8780 Fax



801 SIXTH AVENUE, SUITE 201
P.O. BOX 1808, ST. ALBANS, WV 25 771 1808
PHONE. 304 729 9000 - FAX 304 729 9009

July 17, 2008

Via facsimile and U.S. Mail
412.921.2938

Robert N. Shepard
Crown Coal & Coke
Three Parkway Center, Suite 375
Pittsburgh, PA 15220

**Re:** ***Coal sales from recovery operations at Acme Steel &
Coke***

Dear Mr. Shepard.

I represent Mallard Leasing and Doug Brown of Mallard. It has come to
our attention that Ontonagon Power Group (OPG), or Patti Peterson on behalf or
Ontonagon, may have contracted with your company to market coal from the
referenced plant.

I enclose herewith a copy of the operating agreement between Mallard
and OPG. You will note that paragraph 2, page 1, requires that Mallard market
the coal, that paragraph 3, page 1, gives Mallard sole discretion for marketing all
coal recovered from the site, and that paragraph 2, second page, requires OPG
to guarantee title to Mallard and hold Mallard harmless if there are title issues

Please provide us with a complete copy of any agreement you may have
made with Ms. Peterson and/or OPG which purports to authorize your firm to
market coal recovered from the Acme Steel & Coke plant.

Obviously, it is my Mallard's view that it has the sole discretion when it
comes to marketing this coal. We suspect that OPG did not disclose the terms of
its contract with Mallard to you or your firm.

Under the circumstances, we ask that you not hold yourself out as being in
a position to market the coal at issue. If you have any questions or require
further information, do not hesitate to call me.

NO.291    522



Robert N. Shepard
July 17, 2008
Page 2

Very truly yours,

Mark A. Swartz

Enclosure.

cc:    Doug Brown
       Joel Sprayregen, Esq., counsel for OPG, via fax to 312.527.4011

07/17/2009   10:17   SWARTZ & STUMP > 14129212938                        NO.291   D23
                                                                        PAGE   04/05
06/03/2008   03:47    8667468788        MALLARD LEASING         #0398 P.001/002
NOV.09'2006 15:03 630 358 0117    METAL MASTER

11/09/2006   22:97    3847222184        POINT SERVICE                    PAGE   01/02

## Mallard Leasing,LLC
PO Box 1352, St. Albans, WV



# Memo

**To:** Ontonagon Power Group, Inc. (OPG)

**From:** Mallard Leasing, LLC  (MLL)

**CC:**

**Date:** October 29, 2006

**Re:** Operating terms and conditions for Coal Yard Operations, Acme Steel & Coke, 11920 Torrence Ave., Riverdale, ILL. (Coal Yard Site)

---

### Mallard Leasing:

1. MLL will commence coal recovery operations at the East Chicago Site within thirty days or less from the date of this agreement, or upon completion of on site contractor completing environmental remediation process.

2. Production, cleaning and marketing by MLL will be done in a manner to best promote the interest of both parties.

3. MLL will have sole discretion for the production and marketing of all coal recovered from the site.

4. MLL will be responsible for all production and marketing costs related to the recovery of the coal from the site. All daily production operations will be supervised by MLL on site personnel.

5. MLL will maintain an office on site and will maintain copies of all records including bills of ladings, truck weigh tickets, etc. and such records will be available for inspection and copying.

6. MLL and OPG will each receive 40% / 60% respectively of the selling price of the coal produced and sold from the site. Wire transfers and checks for payment of coal produced and sold from the site will be deposited by check or wired direct to an escrow account which will be set up for receipt of same. MLL and OPG shall have joint custody of the bank escrow account, requiring both signatures for withdrawal. (Coal sales most generally will be set up on a Friday following payment schedule, however, certain company's may have payment methods and payment cycles which may vary from the Friday following schedule.) Payment schedules which vary from Friday following will be indicated to all pertinent parties.

NO.251    004
PAGE  05/05

08/17/2008    10:17    SWARTZ & STUMP → 14129212939

06/23/2008    23:47    8667463788

NOV.09'2006 13:02  630  W58  0817

11/09/2006   22:57    3647223194

MALLARD LEASING                     A0321 P.002/002

METAL MASTER

POINT SERVICE                                      PAGE  #2/02

7. MLL shall, previous to commencement of any recovery operations by MLL or its contractors, shall cause insurance (liability) certificates to be provided to OPG or its designated assignee. Mallard shall hold harmless OPG from all accidents which may occur on the site from daily operations of coal recovery.

8. All personnel of MLL and its contractors shall conform to the minimum safety requirements per OSHA for the jobsite.

9. MLL's only obligation under the agreement is for the recovery of economically feasible coal from the site and once completed all responsibility to the agreement and site shall cease.

10. MLL & OPG shall cause a contingency fund set aside from gross proceeds of coal sales to be established at the rate of (2.5%, two and one half percent, of gross, as received). Contingency fund shall be funded at the rate of 40% from MLL and 60% from OPG. Contingency fund shall cap at $250,000.00 max. The total amount of the contingency fund at the completion of the marketable coal recovery operation shall be returned to MLL and OPG respectively minus any withdrawals from contingency fund for approved remediation or other jointly agreed to use of contingency fund monies for completion of Marketable coal recovery operations. Account shall be set up with MLL & OPG & Cup Trading signature requirement. Disposition of funds shall be within 90 calendar days of completion of Coal recovery operation.

**Obligation Power Group:**

1. OPG will provide documentation of the chain of title for the coal recovered from the site in East Chicago. This must be clear and unequivocal and will be required previous to commencement of any recovery or marketing operations.

2. OPG will guarantee title to the coal and will hold Mallard harmless for any fault that may occur in the chain of title after the coal recovery operations have commenced at the site.

3. OPG will allow Mallard to operate under all required demo permits for its recovery of coal from the site. Under the demo permit this should be considered as part of the clean up operations

4. (ACME Steel & Coke / land owner) will have responsibility for all reclamation and environmental issues and cost, previously existing or current on the site (ACME Steel & Coke / land owner). MLL shall only be held responsible for clean up and or remediation of environmental concerns which thru its operations only may occur. After all coal recovery operations have ceased Mallard will rough grade the property per disturbed area from coal recovery.

Mallard LLC _____        Position _____

Date  11-9-06  5:00pm

OPG _____              Position  P150

Date  11-9-06  5:00pm

= Page 2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**



ONTONAGON POWER GROUP, INC. a
Michigan corporation,

      Plaintiff,

      v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,

      Defendants.

Case No. 08 CH 31272

Judge Mary Ann Mason

## EMERGENCY NOTICE OF MOTION
## FOR PRELIMINARY INJUNCTION

TO:   Mallard Leasing, LLC     Douglas Brown     Industrial Commodity
      107-A Morris Street      107-A Morris Street    Resources, LLC
      Charleston, WV  25301   Charleston, WV  25301  1010 N. Preserve Court
                                                      Wichita, KS  67206

      Patrick Kellerman
      1010 N. Preserve Court
      Wichita, KS  67206

    PLEASE TAKE NOTICE that on September 2, 2008, at 930 a.m. we shall appear before
the Honorable Mary Anne Mason, in Room 2510 at the Richard J. Daley Center, and then and
there present **OPG's Emergency Motion for a Preliminary Injunction**, copies of which are
hereby served upon you.

                            ONTONAGON POWER GROUP, INC.

                            By:_____

                                 One of Its Attorneys

Joel J. Sprayregen
Roger J. Kiley
Attorneys for OPG
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Ste. 2800
Chicago, Illinois 60601
Telephone:  (312) 527-4000
Facsimile:  (312) 527-1007
Firm I.D. 29143
1094282_1

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, certifies and states under penalties as provided by law pursuant to 735 ILCS 5/1-109 that true and correct copies of **OPG's Emergency Motion for Preliminary Injunction** to be served upon:


Mallard Leasing, LLC                     Douglas Brown
107-A Morris Street                      Mallard Leasing, LLC
Charleston, WV  25301                    107-A Morris Street
                                         Charleston, WV  25301

via overnight mail and via facsimile at (866) 746-8780 on this 27th day August, 2008, before 5:00 p.m.


Industrial Commodity Resources, LLC      Patrick Kellerman
1010 N. Preserve Court                   Industrial Commodity Resources, LLC
Wichita, KS  67206                       1010 N. Preserve Court
                                         Wichita, KS  67206

via overnight mail and via facsimile at (316) 218-9397 on this 27th day August, 2008, before 5:00 p.m.

Bill Daitsman

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

ONTONAGON POWER GROUP, INC. a
Michigan corporation,
         Plaintiff,

    v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,
         Defendants.

Case No. 08 CH 31222

Judge Mary Ann Mason

## NOTICE OF FILING

TO:    Mallard Leasing, LLC          Douglas Brown
       107-A Morris Street           107-A Morris Street
       Charleston, WV 25301        Charleston, WV 25301

       Patrick Kellerman            Industrial Commodity Resources, LLC
       1010 N. Preserve Court        1010 N. Preserve Court
       Wichita, KS 67206          Wichita, KS 67206

      PLEASE TAKE NOTICE that on August 27, 2008, the undersigned caused to be filed with the Clerk of the Circuit Court of Cook County, Illinois, Law Division, the *Notice To Appear At The Hearing Of Plaintiff's Motion for a Preliminary Injunction*, a copy of which is attached hereto and hereby served upon you.

                    Respectfully submitted,
                    ONTONAGON POWER GROUP, INC., OPG

                    By: _____
                         One of Its Attorneys

Joel J. Sprayregen
Roger J. Kiley
Attorneys for OPG
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Ste. 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-1007
Firm I.D. 29143

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, COUNTY DIVISION

ONTONAGON POWER GROUP, INC. a
Michigan corporation,

      Plaintiff,

      v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,

      Defendants.

Case No. 08 CH

# 08CH31223

Judge

## OPG'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

### Introduction

Ontonagon Power Group, Inc., ("OPG") moves for a preliminary injunction to maintain

the status quo by enjoining the Defendants Mallard Leasing, LLC (hereinafter "MLL"), Douglas

Brown (hereinafter "Brown"), Industrial Commodity Resources, LLC (hereinafter "ICR") and

Patrick Kellerman (hereinafter "Kellerman") from interfering in any manner with OPG's efforts

to recover and sell coal and coke from the Acme Steel Plant, while this Court determines the

merits of OPG's Complaint for Declaratory and Injunctive Relief ("Complaint"). *See* OPG's

Complaint attached as Exhibit A.

### Background Facts

OPG is a corporation engaged in the business of remediation, demolition, sales, and

consulting. *See* OPG's Complaint ("Complaint"), ¶ 1. OPG is the sole owner of all rights to sell

and remove coal and coke located at the Acme Steel and Coal plant ("Acme Plant"), located at

11236 South Torrence Avenue, Riverdale, Illinois, by virtue of agreement with Jabco Industrial Services Company, Inc. ("Jabco") dated July 6, 2007. *See* Exhibit A to the Complaint. OPG's rights to remove and sell the coal and coke are valuable, unique and time-sensitive. OPG estimates that it will receive in excess of three million dollars for the Product, but all removal of Product must be completed by the time demolition of the Acme Plant is finished. OPG expects demolition to be completed by Jabco by October 21, 2008.

On or about November 9, 2006, OPG appointed MLL as OPG's agent for the recovery of "all coal or coke which may be recovered and marketed economically," with a shipping period of "approximately November 2006 to May 2007." *See* Exhibit C to the Complaint. Thereafter, MLL and Brown materially breached the terms of its agency and its fiduciary obligations as agent for OPG, and the Defendant damaged OPG, by actions and omissions as described in paragraph 6 of the Complaint. Plaintiff then rightfully terminated the contract and agency relationship with Defendants MLL and Brown as described in paragraph 7 and evidenced by Exhibit H of the Complaint. Defendants continue to take actions, as described in paragraphs 8 through 12 and Exhibit I to the Complaint, that frustrate OPG's ability to realize the value of its rights in the coal and coke at the Acme Plant, and damaging its reputation in the industry in which it practices.

OPG now moves for a preliminary injunction that would maintain the status quo, by preventing Defendants from interfering with OPG's efforts to extract coal and coke from the Acme Plant while this Court determines the merits of OPG's Complaint. OPG incorporates by reference herein its Complaint, which is filed simultaneously herewith.

## Argument

1.    OPG has moved for a preliminary injunction, and has provided notice of its motion to the Defendants. A temporary restraining order issued with notice and a preliminary injunction issued with notice are the same type of relief, and require the same elements of proof. *In Re Estate of Wilson*, 373 Ill. App. 3d 1066, 1075, 869 N.E. 2d 824, 833 (1ˢᵗ Dist. 2007). In either case, the moving party must establish that it has a protectable right, that it will suffer irreparable harm if injunctive relief is not granted, that its remedy at law is inadequate, and that there is a likelihood of success on the merits. (*Id.* at 1075, 869 N.E. 2d at 833). The party seeking relief needs to show only a "fair question" about the existence of a claim, and that the court should preserve the status quo until the case can be decided on the merits. (373 Ill. App. 3d at 1076, 869 N.E. 2d at 833).

2.    OPG has a protectable property right in its rights to sell coal and coke from the Acme Plant, as evidenced by Exhibit A to the Complaint.

3.    OPG faces the threat of irreparable harm for which it has no legal remedy, because on October 21, 2008, OPG's rights terminate as to any coal or coke present at the Acme Plant. After the demolition of the Acme Plant, OPG will be unable to realize the full value of the amounts of coal or coke present at the site. This failure to realize the full value of the coal and coke would be a monetary loss difficult to calculate, somewhere between 2 and 4 million dollars.

4.    OPG is also suffering irreparable harm because of the damage to its reputation. The failure to extract the coal and coke from the Acme Plant will damage OPG's reputation in the industry in which it does business. Its reputation is further being damages by Defendants' continued conduct in interfering with its efforts to market and sell the coal and coke, resulting in potential buyers declining to do business with OPG. "For there to be an adequate remedy at law

3

which will deprive equity of its power to grant injunctive relief, the remedy 'must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy.' " *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540, 549, 370 N.E.2d 223, 227 (1977) (citation omitted). The continuing damage to OPG's reputation within its industry is damage difficult to calculate, and is not damage that monetary compensation would cure.

5.     Finally, the rights to extract the coal and coke at the Acme Plant represent the sole asset and source of income for OPG, so the continued interference by Defendants frustrating OPG's efforts to realize its value is eliminating its ability to conduct business. *See Id.* (wrongful suspension of payments constituting 90% of Plaintiff's business would cause damages of an uncertain magnitude).

6.     As set forth in the Complaint, OPG has a likelihood of success on the merits. The contract between OPG and Defendants MLL and Brown was for a certain period of time defined by the shipping period that expired in May of 2007. *See* <u>Exhibit C</u> to the Complaint. After this date the contract became an "at will" contract. Additionally, even if the contract was not "at will," Defendants MLL and Brown's materially breached the contract as described in paragraph 6 of the Complaint, amounting to cause for OPG to terminate the conduct. On February 4, 2008, OPG, terminated the contract, thus terminating any and all rights or powers which MLL or Brown may have possessed with regard to recovery or sale of coal and coke at the Acme Plant, as evidenced by the email attached as <u>Exhibit H</u> to the Complaint.

7.     The balance of harm favors OPG. A preliminary injunction in this case will maintain the status quo by allowing the coal and coke to be extracted from the Acme Plant prior to October 21, 2008, when OPG's rights to the coal and coke is likely to expire. Any claim to extract the coal and coke that is alleged by Defendants would be derivative of OPG's rights, and

4

while this controversy is decided it serves the interest of both parties to have the coal and coke extracted by a third party. The continued actions by Defendants are only serving to delay extraction to the point that it will no longer be possible.

8.    Under these circumstances, OPG has raised a fair question in regard to its claim, established all elements necessary for entry of a preliminary injunction, and in order to preserve the status quo for the benefit of all parties the preliminary injunction should be granted.

WHEREFORE, OPG Ontonagon Power Group, Inc., prays that this Court grant its Motion for Preliminary Injunction, and enter an order preliminarily enjoining, until a hearing on the merits, the Defendants, their agents and any persons acting in active concert with any Defendant, from interfering in any manner with OPG's efforts to recover and sell coal and coke from the Acme Steel Plant, including informing third parties that any of the Defendants are able to or are the sole entities permitted to market coal and coke from Acme, and that this Court grant such other and further relief as this Court deems just and proper.

Dated:  August, 25, 2008

Respectfully submitted,

ONTONAGON POWER GROUP, INC., OPG

By: _____
     One of Its Attorneys

Joel J. Sprayregen
Roger J. Kiley
Attorneys for OPG
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Ste. 2800
Chicago, Illinois 60601
Telephone:  (312) 527-4000
Facsimile:  (312) 527-1007
Firm I.D. 29143
1094042_3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

ONTONAGON POWER GROUP, INC. a
Michigan corporation,
                    Plaintiff,

        v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,
                    Defendants.

Case No. 08 CH 31223

Judge Mary Ann Mason

## RULE 237 NOTICE TO COMPEL PATRICK KELLERMAN TO APPEAR AT THE HEARING FOR PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

TO:    Mallard Leasing, LLC              Douglas Brown
       107-A Morris Street              107-A Morris Street
       Charleston, WV  25301            Charleston, WV  25301

       Patrick Kellerman               Industrial Commodity Resources, LLC
       1010 N. Preserve Court          1010 N. Preserve Court
       Wichita, KS  67206              Wichita, KS  67206

       PLEASE TAKE NOTICE, pursuant to the provisions of Supreme Court Rule 237, the Plaintiff, Ontongan Power Group, requires the appearance at the hearing of its motion for preliminary injunction on September 2, 2008, at 9:30 a.m. in Courtroom 2510 of the Richard J Daley Center, Chicago, before Judge Mary Anne Mason, and from time to time thereafter until excused by specific order of the Court, the following individual, whom is an officer, director or employee of the Mallard Leasing, LLC (the "MLL").

       •   PATRICK KELLERMAN

Each of said witnesses shall produce at the trial or other evidentiary hearing originals of documents or any tangible thing that may be relevant to Plaintiff's motion for a preliminary injunction, including but not limited to: any and all contracts between and among the parties to this litigation; any and all communications, including electronic mail, between and among the parties to this litigation within the relevant time period; any and all documents, including but not limited to sales agreements, purchase orders, and correspondence, relating to the Acme Steel Plant located in Riverdale, Illinois, or the removal of any coal or coke there-from; any and all communications made to third parties regarding the coal or coke located at the Acme Steel Plant located in Riverdale, Illinois.

Respectfully submitted,

ONTONAGON POWER GROUP, INC., OPG

By: _____
        One of Its Attorneys

Joel J. Sprayregen
Roger J. Kiley
Attorneys for OPG
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Ste. 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-1007
Firm I.D. 29143

## AFFIDAVIT OF SERVICE

The undersigned states under penalties as provided by law pursuant to 735 ILCS 5/1-109

that he caused true and correct copies of the attached *Notice To Appear At The Hearing Of*

*Plaintiff's Motion for a Preliminary Injunction* to be served upon:

Mallard Leasing, LLC                    Douglas Brown
107-A Morris Street                     107-A Morris Street
Charleston, WV  25301                   Charleston, WV  25301

Patrick Kellerman                       Industrial Commodity Resources, LLC
1010 N. Preserve Court                  1010 N. Preserve Court
Wichita, KS  67206                      Wichita, KS  67206

by placing same in properly addressed overnight envelopes, correct postage prepaid, in the U.S

Mail at 111 E. Wacker Drive, Chicago, Illinois before the hour of 5:00 p.m. this 27th day of

August, 2008.

William Daitsman

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ONTONAGON POWER GROUP, INC. a
Michigan corporation,
        Plaintiff,

    v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,
        Defendants.

Case No  08 CH 31223

Judge Mary Ann Mason

## NOTICE OF FILING

TO:    Mallard Leasing, LLC
        107-A Morris Street
        Charleston, WV  25301

Douglas Brown
107-A Morris Street
Charleston, WV  25301

        Patrick Kellerman
        1010 N. Preserve Court
        Wichita, KS  67206

Industrial Commodity Resources, LLC
1010 N. Preserve Court
Wichita, KS  67206

        PLEASE TAKE NOTICE that on August 27, 2008, the undersigned caused to be filed with the Clerk of the Circuit Court of Cook County, Illinois, Law Division, the *Notice To Appear At The Hearing Of Plaintiff's Motion for a Preliminary Injunction*, a copy of which is attached hereto and hereby served upon you.

        Respectfully submitted,
        ONTONAGON POWER GROUP, INC., OPG

        By: _____
           One of Its Attorneys

Joel J. Sprayregen
Roger J. Kiley
Attorneys for OPG
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Ste. 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-1007
Firm I.D. 29143



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION

ONTONAGON POWER GROUP, INC. a
Michigan corporation,
       Plaintiff,

  v.

MALLARD LEASING, LLC, DOUGLAS
BROWN, INDUSTRIAL COMMODITY
RESOURCES, LLC and PATRICK
KELLERMAN,
       Defendants.

Case No. 08 CH 31223

Judge Mary Ann Mason

## RULE 237 NOTICE TO COMPEL DOUGLAS BROWN TO APPEAR AT THE HEARING FOR PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

TO:  Mallard Leasing, LLC
     107-A Morris Street
     Charleston, WV 25301

Douglas Brown
107-A Morris Street
Charleston, WV 25301

     Patrick Kellerman
     1010 N. Preserve Court
     Wichita, KS 67206

Industrial Commodity Resources, LLC
1010 N Preserve Court
Wichita, KS 67206

PLEASE TAKE NOTICE, pursuant to the provisions of Supreme Court Rule 237, the Plaintiff, Ontongan Power Group, requires the appearance at the hearing of its motion for preliminary injunction on September 2, 2008, at 9:30 a.m. in Courtroom 2510 of the Richard J. Daley Center, Chicago, before Judge Mary Anne Mason, and from time to time thereafter until excused by specific order of the Court, the following individual, whom is an officer, director or employee of the Mallard Leasing, LLC (the "MLL"):

    *     DOUGLAS BROWN

Each of said witnesses shall produce at the trial or other evidentiary hearing originals of documents or any tangible thing that may be relevant to Plaintiff's motion for a preliminary injunction, including but not limited to: any and all contracts between and among the parties to this litigation; any and all communications, including electronic mail, between and among the parties to this litigation within the relevant time period; any and all documents. including but not limited to sales agreements, purchase orders, and correspondence, relating to the Acme Steel Plant located in Riverdale, Illinois, or the removal of any coal or coke there-from; any and all communications made to third parties regarding the coal or coke located at the Acme Steel Plant located in Riverdale, Illinois.

Respectfully submitted,

ONTONAGON POWER GROUP, INC., OPG

By: _____
One of Its Attorneys

Joel J. Sprayregen
Roger J. Kiley
Attorneys for OPG
SHEFSKY & FROELICH LTD.
111 E. Wacker Dr., Ste. 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-1007
Firm I.D. 29143

## AFFIDAVIT OF SERVICE

The undersigned states under penalties as provided by law pursuant to 735 ILCS 5/1-109

that he caused true and correct copies of the attached *Notice To Appear At The Hearing Of*

*Plaintiff's Motion for a Preliminary Injunction* to be served upon:

Mallard Leasing, LLC
107-A Morris Street
Charleston, WV 25301

Douglas Brown
107-A Morris Street
Charleston, WV 25301

Patrick Kellerman
1010 N. Preserve Court
Wichita, KS 67206

Industrial Commodity Resources, LLC
1010 N. Preserve Court
Wichita, KS 67206

by placing same in properly addressed overnight envelopes, correct postage prepaid, in the U.S.

Mail at 111 E. Wacker Drive, Chicago, Illinois before the hour of 5:00 p.m. this 27th day of

August, 2008.

William Daitsman

08CV4960
JUDGE MORAN
MAGISTRATE JUDGE COX
EDA

# Exhibit B

## IN THE UNITED STATES DISTRICT CIRCUIT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ONTONAGON POWER GROUP, INC. a Michigan corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| MALLARD LEASING, LLC, DOUGLAS BROWN, INDUSTRIAL COMMODITY RESOURCES, LLC and PATRICK KELLERMAN, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### AFFIDAVIT OF PATRICK KELLERMAN

BEFORE ME, the undersigned authority, personally appeared Patrick Kellerman, first being duly sworn and upon oath says:

1.      I am over 21 years of age, of sound mind, and otherwise competent to testify. The statements in this affidavit are based on my personal knowledge, and I could, if called, testify to them.

2.      I understand I am a named defendant in a State Court Action filed in the Circuit Court of Cook County, Illinois, Chancery Division, identified as Case No. 08 CH 31223.

3.      I am currently the owner and managing agent of Industrial Commodity Resources, LLC, which is organized and exists under the laws of Kansas.

4.      I am a resident of Kansas.

5.      I and Industrial Commodity Resources, LLC consent to removal of Case No. 08 CH 31223 to the United States District Court for the Northern District of Illinois, Eastern Division in accordance with the Notice of Removal.

1

FURTHER AFFIANT SAYETH NAUGHT.



Subscribed and sworn before me,
this 29th day of August, 2008.

```
JANET KUSH
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 7-2-12
```

Patrick Kellerman

2

```
08CV4960
JUDGE MORAN
MAGISTRATE JUDGE COX
EDA
```

# Exhibit C

IN THE UNITED STATES DISTRICT CIRCUIT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ONTONAGON POWER GROUP, INC.        )
a Michigan corporation,            )
                                   )
            Plaintiff,             )
                                   )
      v.                           )          Case No.
                                   )
                                   )
MALLARD LEASING, LLC, DOUGLAS      )
BROWN, INDUSTRIAL COMMODITY        )
RESOURCES, LLC and PATRICK         )
KELLERMAN,                         )
                                   )
            Defendants.            )

AFFIDAVIT OF DOUGLAS BROWN

BEFORE ME, the undersigned authority, personally appeared Douglas Brown, first being

duly sworn and upon oath says:

1.      I am over 21 years of age, of sound mind, and otherwise competent to testify.

The statements in this affidavit are based on my personal knowledge, and I could, if called,

testify to them.

2.      I understand I am a named defendant in a State Court Action filed in the Circuit

Court of Cook County, Illinois, Chancery Division, identified as Case No. 08 CH 31223.

3.      I am currently the owner and managing agent of Mallard Leasing LLC, which is

organized and exists under the laws of West Virginia.

4.      I am a resident of West Virginia.

5.      I and Mallard Leasing, LLC consent to removal of Case No. 08 CH 31223 to the

United States District Court for the Northern District of Illinois, Eastern Division in accordance

with the Notice of Removal filed by Defendant Patrick Kellerman.

1

FURTHER AFFIANT SAYETH NAUGHT.

_____
Douglas Brown

_____
Subscribed and sworn before me,
this __ day of August, 2008.

OFFICIAL SEAL
Notary Public, State of West Virginia
Tracy M. Tyler
1015 7th Avenue
Saint Albans, WV 25177
My Commission Expires April 19, 2016

2